Edmond MATTON,

v.

**WHITE MOUNTAIN CABLE CONSTRUCTION CORP.**

No. Civ.A. 97–10714–RGS.

United States District Court, D. Massachusetts.

Dec. 1, 1999.

---

Steven M. Ballin, John J. Davis, Pierce, Davis, Fahey & Perritano, LLP, Boston, MA, for plaintiff.

Robert A. Curley, Jr., Mark Furcolo, Curley & Curley, Boston, MA, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

STEARNS, District Judge.

This motion would squarely challenge the limits of the ability of a trial court to impose and enforce time limits on the presentation of a civil case but for one important omission: defendant failed to seasonably raise the issue before or during the trial. See *Bryant v. Consolidated Rail Corp.*, 672 F.2d 217, 218–219 (1st Cir.1982).

The case was reasonably straightforward in that liability was not seriously in doubt (defendant's protestations notwithstanding). Edmond Matton, a veteran City of Beverly police patrolman, was struck on the head by the bucket of an aerial lift while directing traffic at a White Mountain Cable Construction Corporation worksite. The accident was witnessed by a passerby who testified that the bucket "came out of the blue" and hit the plaintiff unawares. Liability was virtually conceded by the operator of the lift who testified that he had neglected to look before literally lowering the boom on the hapless officer.

The viable issues to be tried were the extent of the plaintiff's injuries and damages. Because of the accident, the plaintiff was involuntarily retired from the Beverly police force on a disability pension much less attractive than the one he would have received at normal retirement.[1] The defense, to the extent that it had any coherence, was based on a claim of comparative negligence (which was rejected by the jury)[2] and a generalized attack on the plaintiff as a malingerer.[3]

As is its custom in civil cases, the court issued a pretrial order on March 31, 1999,[4] asking among other things, for an informed estimate of the probable length of the trial (based on half-day sittings). The pretrial order also informed the parties of the court's practice of setting strict time limits. Plaintiff submitted an estimate of ten days duration for the trial. Defendant offered no differing estimate of its own. At a pretrial conference held the day prior to opening arguments (September 12, 1999), the court stated that, based on its review of the file, it would allow each side nine hours for their respective presentations, exclusive of the empanelment day and opening statements and closing arguments. Neither plaintiff's nor defendant's counsel objected or asked for additional time. At the conclusion of each day's evidence, the court informed counsel of the precise time that each had used, and periodically during the course of the trial

1. Plaintiff's disability pension is pegged to a patrolman's base salary ($40,800 at the time of trial) and carries a cap on outside earnings of $14,000. Plaintiff is also obligated to reimburse the City of Beverly the sum of $127,589, representing the injured on duty pay and medicals that he received before being placed on disability. (By agreement of the parties, plaintiff's obligation to repay the City from any judgment was explained to the jury). By contrast, with overtime and detail work, plaintiff was earning approximately $70,000 a year at the time of the accident and, according to the City's Human Resources Director, could have expected to earn well in excess of $100,000 annually before retiring at age 65. A normal retirement pension would have been pegged at 80% of plaintiff's three best earning years with no cap on outside earnings. As plaintiff points out, the bulk of the jury's $850,000 award can be explained as compensation for lost earnings (and the cost of repaying the City's liens). See Ballin Aff., ¶ 12.

2. Defendant's theory was that the plaintiff was negligent in failing to keep an eye on the movements of the boom. The jury was warranted in concluding that a detail officer's attention is expected to be focused on pedestrians and oncoming traffic and not on work activity at the site.

3. The suggestion of malingering was based on surveillance videotapes depicting the plaintiff going about his normal daily activity (visiting the post office, going to and from a gym, working on his car, etc.). The tapes, which were shown to the jury at tedious length, disclosed nothing that was inconsistent with plaintiff's testimony that his physical health was better today than before the accident.

4. The trial was originally scheduled to begin May 3, 1999, but was continued at defendant's request after one of its expert witnesses unexpectedly died.

when requested to do so by one or both attorneys. After the close of evidence on Friday, September 16, 1999, the court warned defendant's counsel that he was needlessly wasting time with "aimless" cross-examination. (Defendant's counsel then had over half of his allotted time remaining). Counsel expressed no concern about the time constraints and made no request for additional time. Counsel's *first* (and only) objection to the time limits came *after* the court had instructed the jury towards the end of the day on September 22, 1999. The jury returned its verdict at 3:20 p.m. on September 23, 1999.[5]

■ In the motion for a new trial, defendant's counsel claims that he was prevented from presenting two medical witnesses who would have testified "that [p]laintiff did not have the injuries he claimed to have, that he was malingering, and that he was making his subjective complaints only for secondary gain." Defendant's Memorandum at 5. Counsel maintains that his inability to call these witnesses was devastating to his case.[6] It is, of course, within the discretion of the court to order a new trial if it is convinced that a trial was manifestly unfair because of an erroneous ruling. *Wilson v. Groaning,* 25 F.3d 581, 584 (7th Cir.1994). In cases of alleged judicial misconduct, the issue is the same, whether because of the judge's actions, "the trial was not fair to the party moving." *Santa Maria v. Metro–North Commuter Railroad,* 81 F.3d 265, 273 (2d Cir.1996). "However, a new trial motion based [on erroneous evidentiary rulings] requires a proper objection at trial and is limited to the basis of the objection argued when the evidence was offered for admission." 12 *Moore's Federal Practice,* § 59.13[2][b][E] (3d ed.1999). Similarly, where a party seeks a new trial based on allegations of judicial misconduct, "[a]n objection to the alleged misconduct is ordinarily required, either at the time of the misconduct or at the next available opportunity outside the jury's presence." *Id.* at § 59.13[2][b][ii].[7] While the failure to object ordinarily results in a waiver of the issue for appeal (or as a grounds for seeking a new trial), the "plain error" doctrine may in extreme cases provide a narrow avenue of relief. See Fed.R.Evid. 103(d). Cf. *Secretary of Labor v. DeSisto,* 929 F.2d 789, 794 n. 3 (1st Cir.1991) ("Normally a failure to object would preclude us from finding error. In this case, however, the one-witness limit and the resulting paucity of evidence so infected the entire proceeding that we are unable to review the case without considering the issue.")

Here no egregious unfairness occurred. The testimony of defendant's two medical experts, while perhaps of greater potential import to the jury than counsel's often inept cross-examination and pointless videotapes, would have simply embroidered further a theme (malingering) that counsel had ineffectually pursued throughout the trial. Ineffectual because the suggestion of malingering was beside the point. Whether plaintiff was exaggerating his injuries or not, the fact remained that he had been involuntarily retired because of the accident from a job to which he was deeply attached.[8] Any malingering on plaintiff's part was only relevant to

---

**5.** The jury did not sit on September 20, 1999, because of Yom Kippur and instead sat for a full day on Wednesday, September 22, 1999. The jury also deliberated most of a day before returning the verdict.

**6.** Prior to the trial, the court had ruled that it would admit expert reports into evidence if the expert was offered for cross-examination. In the hour he had remaining, counsel could have exercised the option of simply calling his experts to the stand in order to offer their curricula vitae and expert reports. Or counsel could have asked for additional time to make a more complete presentation.

**7.** While it is true that counsel "need not engage in herculean efforts to continually object and attempt to offer . . . evidence at trial" in defiance of an unyielding court, Defendant's Memorandum at 13 n. 1, this does not excuse counsel's failure to make any objection at all. See *Johnson v. Ashby,* 808 F.2d 676, 679 (8th Cir.1987) ("While a party may believe that it would be futile, so far as the trial court is concerned, to make an objection, and that the objection may irritate the Court, it is still incumbent upon the party to make the objection in order to preserve the issue for appeal.")

**8.** Defendant's counsel somewhat inconsistently brought out the fact several times on cross-examination that plaintiff had bitterly contested the City's decision to force him into retirement.

his duty to mitigate his future damages. And this was not a contested issue. Plaintiff's vocational expert testified that there were less demanding and available jobs that plaintiff could do, but also pointed out that because plaintiff had been placed on disability, any income he earned above $14,000 a year would simply be deducted from his pension (in effect, exchanging taxable for tax-free dollars).[9]

The cases cited by defendant by and large offer cold comfort to its cause. In *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347 (1st Cir.1998), the Court of Appeals *upheld* the district court's exclusion of rebuttal evidence despite a seasonable offer of proof by the defendant. In *Elgabri v. Lekas*, 964 F.2d 1255, 1259–1260 (1st Cir.1992), the Court of Appeals again *upheld* a district court order precluding the plaintiff from calling the defendant as part of his case in chief. On the other hand, in *DeSisto*, 929 F.2d at 796, the Court of Appeals found an abuse of discretion where the court arbitrarily limited the parties to one witness each. These cases, however, are not in point as they address the trial court's power to impose limits on the presentation of evidence. Here, no such limits were imposed. The choice of witnesses and order of presentation was left solely to the discretion of counsel.

More to the point, in *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604 (3d Cir.1995), the Court of Appeals criticized the district court for reversing direction midtrial and reducing the amount of the time it had allotted to each side.[10] Nonetheless, the court refused to reverse the verdict because it was "unable to conclude that [the trial judge's] ruling had any impact on the out-

come of the case." *Id.* at 611. Similarly, in *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir.1996), the Court of Appeals was obviously appalled at the district court's decision to limit two trials (one bench, the other jury) to one day each with five minute opening statements (among other bizarre rulings). It nevertheless refused, as in *Duquesne*, to reverse, because it could not conclude that the outcome would be different "even if [the plaintiff] were allowed to present fully all her evidence in a comprehensive manner."

Most on point is *McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990), where despite the trial court's midstream reduction of the time allotted (forcing defendant's final four witnesses to literally run to the witness stand), the Court of Appeals held that defendant had waived its objection by failing to make an offer of proof as to what it would have done with the additional half-hour it unsuccessfully requested. So too in *Johnson*, 808 F.2d at 678, plaintiff was held to have waived the issue because he "lodged no objection to the time limits until after the close of the evidence, and never attempted to introduce the evidence." And the last case cited by defendant, *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1508–1509 (9th Cir.1995), is especially instructive.

> Although the court eventually imposed a rigid limit on time, its actions, when viewed in the context of the entire trial, were reasonable. Even if the court did not explicitly state its policy of charging break time to the parties, it regularly kept both sides informed of the time remaining throughout the trial. The parties' fre-

---

9. Despite the squandering of his time, defendant's counsel had an hour remaining when plaintiff rested. Instead of calling either or both of his experts (who were in the courtroom waiting to testify) and offering their reports into evidence (as permitted by the court's pretrial ruling) counsel inexplicably called a visibly hostile neurologist (Dr. Albert Fullerton) who had been one of the independent physicians who had examined plaintiff for the Beverly Retirement Board. Dr. Fullerton did testify that he believed plaintiff's symptoms to be inconsistent with a brain injury but to little else of assistance to defendant's case. Defendant complains that the court erroneously overruled counsel's objection

to plaintiff's suggestion in closing argument that the jury could infer from defendant's failure to call the expert witnesses that their testimony would not have been helpful to defendant's case. The argument might have been better phrased, but the suggested inference was in the bounds of plausibility. Moreover, the court instructed the jury repeatedly that arguments by counsel could not be given any evidentiary weight.

10. The district court also rather oddly charged plaintiff with the time defendant spent cross-examining plaintiff's witnesses.

quent, specific inquiries about the time accounting reveal that the court's method of charging time did not unfairly surprise either party....

Most significantly, the record reveals that GSX, not the court, was primarily responsible for its inability to present its case within the time limits. GSX used the vast majority of its time during its case in chief, introducing duplicative evidence and taking a leisurely approach to its presentation....

GSX's counsel also failed to heed at least five specific warnings by the district court to save sufficient time for cross-examination during MCI's case;....

In addition, allocation of additional time to GSX would have been unfair to MCI. At the time of GSX's request for additional time, MCI represented to the court that it had reluctantly condensed its cross-examination of GSX's witnesses in order to save enough time for its case-in-chief. Just as GSX has argued before this court regarding MCI's witnesses, MCI asserted that several of the GSX witnesses had mischaracterized the facts, but that it was unable to impeach them thoroughly within the allotted time. Thus, to grant GSX additional time would reward its inefficient use of time and penalize MCI for managing its time.[11]

■ The placing of reasonable time limits on the duration of a trial is implicitly authorized by Rule 611 of the Federal Rules of Evidence and explicitly by Local Rule 43.1 of the District Court. See also *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 442–443 (1st Cir.1991). From a jury's point-of-view time limits are especially salutory. While judges wax eloquent on the joys of jury service, most jurors approach the prospect with the enthusiasm of a French peasant for the corvée. One of the few ameliorating comforts a court can offer reluctant jurors is the assurance of a reasonably defined schedule around which they can plan their lives. Time limits accomplish this. They also improve the quality of the juror's experience by focusing the energies of the lawyers on the essentials of the case.[12] Arguably, that did not happen here (at least in defendant's case), but it has in every other trial in which I have imposed similar limits.

I recognize that for the judge the operative words are "reasonable" and "flexible." There will often circumstances in which additional time will be requested and circumstances in which it should be granted.[13] But the operative word for the lawyer is "requested." The eighteen hour time allotment in this case was made after soliciting the parties' estimate of the length of the trial. The plaintiff said ten days, defendant said nothing different. The court granted eight. Neither party objected. And eight was enough, as plaintiff's counsel demonstrated by putting on sixteen witnesses and finishing with time reserved for c ross-examination.[14]

11. Defendant's remaining two cases add little. In *United States v. Vest*, 116 F.3d 1179 (7th Cir.1997), the Court of Appeals *upheld* the imposition of reasonable time limits in a *criminal* case. In *Amarel v. Connell*, 102 F.3d 1494, 1513 (9th Cir.1996), the Court found time limits reasonable where they approximated the parties' initial estimates of the duration of the trial.

12. The first case in which I issued time limits was a criminal tax fraud case involving a labyrinth of transactions, both fictitious and genuine. The prosecutor had given me an estimate of four weeks for her case-in-chief. It soon became obvious that she would never meet that goal. So I imposed a time limit based on her original estimate.

Once the time limit was imposed, she moved along briskly and finished two hours early. Even more importantly, her case became clearer because she had to talk about the forest rather than each tree, or even each leaf.

Hon. William O. Bertelsman, "Judges Should Set Time Limits on Trials for the Public's Sake," *American Bar Ass'n Journal*, October 1994, at 116.

13. My experience in almost every other case has been that the parties rarely use the allotted time, perhaps because of lawyers' precautionary tendency to over-estimate the length of the trial.

14. Counsel accurately relates the court's policy of discouraging sidebar conferences. However, he implies (falsely) that he was never given the opportunity to make a request for additional time. Counsel neglects to mention that the court made itself available before and after each trial session and during all breaks to hear matters of concern to counsel on the record. Defendant's counsel also states that the court forbade any request for an extension of time. Defendant's *Memorandum*, at 13. This is blatantly untrue.

## ORDER

For the foregoing reasons, defendant's Motion for a New Trial is *DENIED*.

SO ORDERED.

Local Rule 43.1(A)(2) provides that requests for additional time may be made at any time by formal motion. As plaintiff points out, the court acted promptly on all motions filed before and during the eight day trial. Counsel's declaration that he refrained from requesting additional time for fear of inflaming the jury is puzzling, given the fact that the jury had agreed on Tuesday, September 21 to begin working full days to see the trial to its conclusion. See Furcolo Aff. At ¶ 6. It is difficult to believe that the jury would have been "inflamed" had the trial, upon a proper request, been extended an additional few hours. Whether the request would have been granted is one of those things that is impossible to know because the request was never made. It would be unfair for me to state after-the-fact how I would have ruled had a request been made, although I have never considered myself "inflexible" in the handling of a trial and I certainly have never held an attorney in contempt for disagreeing with one of my rulings. Furcolo Aff., ¶ 10.