**Donald SCHMIDT, et al.**

**v.**

**Kenneth DEVINO, et al.**

**No. 3:99 CV 555 JGM.**

United States District Court, D. Connecticut.

May 5, 2000.

James P. Brennan, Brennan & Isaac, Waterbury, CT, for plaintiffs.

Frederick W. Krug, Matzkin, Krug & Danen, P.C., Waterbury, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MARGOLIS, United States Magistrate Judge.

On March 25, 1999, Donald Schmidt ["Schmidt"] filed a four-count complaint against Kenneth Devino and Devino Fuels, Inc. ["defendants"] pursuant to the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510 *et seq.* for the alleged wiretapping of his workplace telephone. (Dkt. # 1 at ¶¶ 1, 6 & 8).[1] Defendants filed an answer to the complaint on August 23, 1999 denying the allegations of wiretapping, and asserting three affirmative defenses, all of which were based on statutes of limitations. (Dkt.# 17).

On August 24, 1999, Schmidt filed an amended complaint (Dkt.# 18),[2] to which defendants have not responded. In the amended complaint, plaintiff Schmidt alleges that Kenneth Devino intercepted, recorded and/or used wire or oral communications made to or from Schmidt's office telephone at Devino Fuels, Inc. (Dkt. # 18 at ¶¶ 6 & 8). Schmidt claims the wiretapping occurred over a four year period from 1992 to 1996. (*Id.* at ¶ 7). Schmidt alleges that the wiretapping was conducted without authority of a judicial warrant, court order or legislative authorization, in violation of 18 U.S.C. § 2510. (*Id.* at ¶ 10).

Initially this case was assigned to U.S. District Court Judge Peter C. Dorsey. The parties consented to trial before this Magistrate Judge on July 2, 1999. (Dkt.# 13). Pending before the Court is defendants' Motion for Summary Judgment, with brief and exhibits in support, and a Local Rule 9(c)1 statement ["Defendants' Statement"], filed February 8, 2000 (Dkts.##22–25),[3] in response to which plaintiffs filed an objection, with brief ac-

---

1. Count I alleges the federal claim. Counts II, IV & V allege state causes of action; there is no Count III.

2. On July 26, 1999, plaintiff filed a Motion to Join Additional Plaintiffs, which was granted on August 24, 1999. (Dkt.# 15). The amended complaint added Eric Schmidt, Diane Dreskinis Schmidt, Lillian Schmidt [hereinafter collectively referred to as "Schmidt family"] and Robert Hanahan as plaintiffs. In all other respects, the allegations remain the same.

3. Attached to Dkt. # 23 was a copy of an unpublished opinion. Dkt. # 25 consists of the following deposition transcripts: of Donald Schmidt, taken on November 18, 1999; Glen Duplissie, taken on June 1, 1999; Kenneth Devino, taken on July 7, 1999; Attorney Robert Hanahan, taken on September 15, 1999; Eric Schmidt, taken on September 22, 1999; Diane Dreskinis Schmidt, taken on September 22, 1999 (erroneously identified as the deposition of Lillian Schmidt); and Lillian Schmidt, taken on January 11, 2000.

companied by an appendix in support, together with a Local Rule 9(c)2 statement ["Plaintiffs' Statement"], on February 25, 2000. (Dkts.##26–29. *See also* Dkt. # 34).[4] Defendants filed a reply brief on March 15, 2000. (Dkt.# 33).

For the reasons stated below defendants' Motion for Summary Judgment (Dkt.# 22) is *granted* in part and *denied* in part.

## I. FACTUAL SUMMARY

The following summary is based upon statements from the Local Rule 9(c) Statements of Material Facts Not in Dispute and documents cited therein, and, as such, do not represent factual findings of the Court. Devino Fuels, Inc. is a Connecticut corporation located in Waterbury, CT. (Defendants' Statement &.Plaintiffs' Statement at ¶ 1). Brothers Kenneth and Roger Devino own Devino Fuels. (*Id.* at ¶ 2). Donald Schmidt worked at Devino Fuels from November 1980 to April 19, 1996. (*Id.* at ¶ 3). Schmidt and Roger Devino had been close friends for many years, prior to Schmidt's employment at Devino Fuels. (*Id.* at ¶ 4). Roger Devino, rather than Kenneth, actively ran the company throughout the 1980's. (*Id.* at ¶ 5). Kenneth Devino took on a more prominent role at Devino Fuels, and attended weekly meeting with Schmidt and Roger Devino beginning in 1992. (*Id.* at ¶ 6). Kenneth Devino criticized Schmidt in a manner which Schmidt regarded as highly unprofessional and dictatorial. (*Id.* at ¶ 7). Roger Devino stopped working at Devino Fuels on February 20, 1995, for medical reasons. (*Id.* at ¶¶ 8 & 21). After Roger's retirement, Schmidt's working relationship with Kenneth Devino deteriorated, until April 1996 when Kenneth Devino terminated Schmidt's employment at Devino Fuels. (*Id.* at ¶¶ 9 & 22).

While Roger Devino was still working at Devino Fuels, Kenneth Devino spoke with him about Schmidt's job performance, and Roger Devino protected Schmidt based on their long standing friendship. (*Id.* at ¶ 10). In 1992, Kenneth Devino wanted to show his brother that Schmidt was involved in matters other than company business, and authorized Glen Duplissie to install a recording device on Donald Schmidt's office telephone line. (*Id.* at ¶ 11). In 1992, Duplissie was an employee of Industrial Development Group ["IDG"]. (*Id.* at ¶ 12). Duplissie purchased the necessary equipment and installed the recording device on Schmidt's office telephone in the fall of 1992. (*Id.*). After Duplissie was able to get the recording device to function properly, he listened to a tape recording on which he identified the voices of Schmidt's then girlfriend and current wife, Diane Dreskinis Schmidt, and Attorney Robert Hanahan. (*Id.* at ¶ 13). Duplissie turned the tape over to Kenneth Devino and showed him how to retrieve tapes and place new tapes in the recording device. (*Id.* at ¶ 14). Duplissie heard no other conversations recorded on Schmidt's telephone other than the parts of the two conversations which he claims he heard when he first installed the recording device in the fall of 1992. (*Id.* at ¶ 15).

Duplissie changed the tapes between four and six times, and then showed Kenneth Devino how to do it. (*Id.* at ¶ 16). Duplissie installed the recording device and showed Kenneth Devino how to operate it before November 19, 1992, because on that date Duplissie and his wife flew to Arkansas for the adoption of their son. (*Id.* at ¶ 17). After the fall of 1992, Duplisse had no further involvement with the tape recording device until approximately five months before Schmidt's employment at Devino Fuels ended. (*Id.* at ¶ 18). Kenneth Devino instructed Duplissie to re-

---

4. Dkt. # 29 contained excerpts from depositions of Donald Schmidt, taken on November 18, 1999; Glen Duplissie, taken on June 1, 1999; Kenneth Devino, taken on July 7, 1999; Robert Hanahan, taken on September 15, 1999, and an affidavit by Donald Schmidt, dated February 21, 2000.

move the recording device, and Duplissie did so in November 1995. (*Id.* at ¶ 19).

On August 27, 1997 Duplissie's employment with IDG ended, and he believes IDG owes him $120,000. (*Id.* at ¶ 23). As a result of Duplissie's belief that IDG owes him $120,000, Duplissie has a strong dislike of Kenneth Devino; he thinks Kenneth Devino is a "piece of garbage." (*Id.* at ¶ 24).

In late winter or early spring 1998, Duplissie told Schmidt that he had installed a listening device on Schmidt's office telephone. (*Id.* at ¶ 25). Schmidt had suspicions and had contacted a security firm in Waterbury regarding recording equipment. (*Id.* at ¶ 26). Schmidt was suspicious about certain coincidences which had occurred. (*Id.* at ¶ 27). In either 1994 or 1995, after Schmidt discussed on the telephone a legislative issue involving taxing of motor fuel with the executive director of the State Petroleum Association ["ICPA"], Kenneth Devino told Schmidt to be less involved in ICPA. (*Id.* at ¶ 28). Schmidt's suspicions were aroused during the period of 1992 to 1994 because Kenneth Devino was aware that Schmidt was making numerous telephone calls in connection with politics, spoke to Schmidt about the calls and issued him a written reprimand. (*Id.* at ¶ 29).

Schmidt believed that Kenneth Devino changed his work responsibilities after Roger Devino left the company, because Kenneth Devino had overheard a conversation between Schmidt and Robert Hanahan in which Hanahan told him to accept the changes in his responsibilities or leave his employment with Devino Fuels. (*Id.* at ¶ 30). Schmidt told Hanahan to call him at home because he felt uncomfortable with the coincidences in spring 1995. (*Id.* at ¶ 31). Hanahan was suspicious that Schmidt's office telephone was being tapped; he and Schmidt discussed the situation frequently in spring 1995, and he encouraged Schmidt to quit his job. (*Id.* at ¶ 32). Schmidt recalls these conversations with Hanahan in the spring of 1995 and

does not dispute Hanahan. (*Id.* at ¶ 33). As a result of Schmidt's suspicions, he unscrewed and examined the mouth piece of his telephone and was more careful about his phone conversations. (*Id.* at ¶ 34). Schmidt felt that if his telephone was tapped, Kenneth Devino was logically the person responsible. (*Id.* at ¶ 36).

Schmidt has never heard a recording nor seen a transcript of any conversation from his office telephone at Devino Fuels. (*Id.* at ¶ 37). Schmidt's claims are based upon the information Glen Duplissie told him in 1998, which confirmed suspicions he had for many years. (*Id.* at ¶ 38).

From 1992 to 1996, Eric Schmidt frequently spoke by telephone with his father, Donald Schmidt, while he was at work. (*Id.* at ¶ 39). Eric Schmidt has no personal knowledge that any of his telephone conversations with his father were recorded at Devino Fuels; he is relying on what his father has told him. (*Id.* at ¶ 40).

Diane Dreskinis Schmidt met Donald Schmidt in September 1993 and they were married on January 9, 1999. (*Id.* at ¶ 41). After she met him, Diane Dreskinis Schmidt frequently spoke with Schmidt by telephone at Devino Fuels from September 1993 to 1996. (*Id.* at ¶ 42). Diane Dreskinis Schmidt has no personal knowledge that any of her telephone conversations with Schmidt were recorded at Devino Fuels. (*Id.* at ¶ 43).

Lillian Schmidt is Donald Schmidt's mother. (*Id.* at ¶ 44). She learned of the lawsuit after Schmidt started it, and understood that he was doing something about a disagreement he had with Kenneth Devino. (*Id.* at ¶ 45). Lillian Schmidt does not know what the disagreement was. (*Id.*). Schmidt did not talk to his mother about his problems while he was employed at Devino Fuels; he kept them to himself. (*Id.* at ¶ 46). Lillian Schmidt does not think Kenneth Devino or Devino Fuels has harmed her. (*Id.* at ¶ 47). She sued Kenneth Devino because he was obnoxious toward Schmidt. (*Id.* at ¶ 48). Lillian

Schmidt does not know how she can contribute to the lawsuit but thought it was a good idea to join anyway. (*Id.* at ¶ 49). Schmidt suggested she join the lawsuit. (*Id.* at ¶ 50). While Schmidt was employed at Devino Fuels, he spoke with Lillian Schmidt on the telephone on a weekly basis. (*Id.* at ¶ 51). Lillian Schmidt never spoke to Schmidt about her suspicions that her phone calls were being recorded, and cannot give an example of any phone call she thought was recorded. (*Id.* at ¶ 53). Lillian Schmidt has no information, only suspicions, that her phone calls were recorded. (*Id.* at ¶ 54).

## II. DISCUSSION

Defendants assert that they are entitled to summary judgment because plaintiffs failed to commence suit within the two year limitation period pursuant to 18 U.S.C. § 2520(e). (Dkt. # 22 at 1–2; Dkt. # 23 at 5–8). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir.1995). The inquiry performed under a summary judgment motion pursuant to Rule 56 is whether "there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If, after all reasonable inferences

and credibility assessments are drawn in favor of the nonmoving party, there is sufficient evidence to permit a rational juror to find in the nonmovant's favor, summary judgment must be denied. *See McCarthy v. New York City Tech. College,* 202 F.3d 161, 167 (2d Cir.2000) (citation omitted). "The nonmovant, however, may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; instead, specific facts must establish a genuine issue of material fact. To avoid summary judgment, the nonmovant may not rest upon the mere allegations or denials of her pleading." *United States v. One Parcel of Property,* 985 F.2d 70, 72 (2d Cir.1993)(internal quotation marks and citations omitted).

### A. Federal Statute of Limitations

As an initial matter, the Court notes that there is a factual dispute as to how long the recording device was installed on Schmidt's telephone line at Devino Fuels. Defendants claim that after installing the recording device Duplissie was unable to get it to function properly. (Defendants' Statement at ¶ 20). Defendants claim nothing audible was ever recorded on the tapes, and that Kenneth Devino instructed Duplissie to remove the device, which he did within a couple of weeks of installation in 1992. (*Id.*). However, plaintiffs claim that Kenneth Devino did not tell Duplissie to remove the recording device until either late 1995 or early 1996. (Plaintiffs' Statement at ¶ J).

The statute of limitations governing this action provides that "[a] civil action under [18 U.S.C. § 2520] may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Defendants argue that Schmidt had a reasonable opportunity to discover the wiretap on his office phone prior to March 1998 when Duplissie informed him of the taping; in fact, defendants claim the wiretap could have reasonably been discovered by plaintiffs prior to

March 25, 1997. (Dkt. # 23 at 7–8). If plaintiffs had a reasonable opportunity to discover the wiretap prior to March 25, 1997, the statute of limitations bars their claim. 18 U.S.C. § 2520(e). Plaintiffs, however, contend that the doctrine of fraudulent concealment works to toll the running of the statute of limitations until the time plaintiffs were notified of the wiretap. (Dkt. # 27 at 5–12).

■ The fraudulent concealment doctrine "is an equitable [doctrine] that tolls a statute of limitations until such time as a plaintiff discovers or reasonably should have discovered the cause of action." *In re State Police Litig.*, 888 F.Supp. 1235, 1249–50 (D.Conn.1995) (citation omitted), *appeal dismissed*, 88 F.3d 111 (2d Cir. 1996). "[T]he purpose of the fraudulent-concealment doctrine is to prevent a defendant from ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.) (citation and internal quotation marks omitted), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).

■ "[Q]uestions of tolling and application[ ] ... are governed by state law." *State Police Litig.*, 888 F.Supp. at 1249 (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Connecticut law provides for the application of the fraudulent concealment doctrine. *See* CONN. GEN. STAT. § 52–595 ("If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."). The doctrine applies to federal statutes of limitations, as well as state law claims. *See State Police Litig.*, 888 F.Supp. at 1250. "In order to establish fraudulent concealment and hence to toll the running of the statute of limitations, the plaintiff must show that the defendant took some misleading, deceptive or otherwise contrived action to conceal information material to the plaintiff's claim." *Sprint Communications Co. v. F.C.C.*, 76 F.3d 1221, 1226 (D.C.Cir.1996)(internal quotation marks and citation omitted). However, "[s]ince it is the nature of telephone recording to be self-concealing, ... the fraudulent concealment doctrine [applies]." *State Police Litig.*, 888 F.Supp. at 1250 (citation omitted).

■ Kenneth Devino instructed Duplissie to install the recording device in such a way so that no one would be able to detect it. (Dkt. # 29, Duplissie Deposition at 24–25). Kenneth Devino gave Duplissie a key to Schmidt's office, and Duplissie went to the office to install the recording device during the nighttime. (*Id.* at 18–19). He removed the plate covering the floor jack in Schmidt's office and spliced the wires of the jack in order to hook up the recording device to the phone line. (*Id.* at 20). Next he ran the wires into the basement over a heating duct and hid the recording device above the heating duct. (*Id.* at 20, 25–27). The recording device itself could not be seen or reached without climbing a ladder and reaching over the duct work. (*Id.* at 28). The Court concludes that the fraudulent concealment doctrine is applicable, considering the secretive installation together with the inherent aspect of concealment found in wiretapping.

The next issue is whether plaintiffs had a reasonable opportunity to discover the wiretap. "Central to the doctrine [of fraudulent concealment] is discovery, and it applies where, as here, the defendants' acts are self-concealing." *State Police Litig.*, 888 F.Supp. at 1250 (citation omitted). The defendant must show that plaintiffs had notice sufficient to cause them to discover the fraud with due diligence. *See Sprint Communications*, 76 F.3d at 1226.

[A] cause of action does not accrue, when a person has a mere hunch, hint suspicion, or rumor of a claim. Accrual

only occurs when a party has discovered, or should have discovered, the critical facts of both his injury and its cause. Suspicions may create a duty to inquire, but where the facts involve covert activity ... normal inquiry is likely to be in vain.

*Socialist Workers Party v. Attorney Gen. of U.S.*, 642 F.Supp. 1357, 1413 (S.D.N.Y.1986)(internal quotation marks and citations omitted). "[W]hat a plaintiff knew and when he knew it, in the context of a statute of limitations defense, are questions of fact for the jury." *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1484 (D.C.Cir.1989) (citations omitted).

Defendants contend that the suspicions held by Schmidt and his attorney, Hanahan, had sufficient notice to investigate the possibility of a concealed wiretap on Schmidt's office telephone line. (Dkt. # 23 at 7–8). Although Schmidt held suspicions that his phone calls were being overheard or otherwise monitored (Dkt. # 25, Donald Schmidt Deposition at 41–46), and he spoke of his suspicions with Hanahan (Dkts.##25 & 29, Robert Hanahan Deposition at 21–23), there is evidence that Kenneth Devino employed other means of monitoring Schmidt's telephone conversations which would allow him to know to whom Schmidt was talking while in his office at Devino Fuels. (Dkts.##25 & 29, Kenneth Devino Deposition at 42–44). Kenneth Devino had several secretaries, at least one of whom would always answer the incoming phone calls at Devino Fuels. (*Id.* at 42). He instructed the secretaries to make notes of the calls that came into the office for Schmidt. (*Id.* at 43). Kenneth Devino also mandated that Schmidt keep his office door open at all times; he then stationed a secretary outside Schmidt's office to monitor all of his outgoing calls. (*Id.* at 44).

Clearly, plaintiffs' suspicions that the telephone line on which they spoke was tapped does not amount to "notice" sufficient enough to require them to conduct any inquiry considering the evidence that Kenneth Devino used non-wiretap means to gather information on Donald Schmidt's telephone conversations. The lack of notice of the wiretap combined with the secretive installation of the recording device on Schmidt's telephone line preclude granting summary judgment, as there is a genuine issue of material fact concerning when plaintiffs had a reasonable opportunity to discover the wiretap. Whether plaintiffs had sufficient knowledge to discover the wiretap and the time frame of when they knew it are questions of fact for the jury. *See Riddell*, 866 F.2d at 1484. Also, as noted earlier, a factual dispute exists as to how long the recording device was operating on Schmidt's telephone line. (Defendants' Statement at ¶ 20 and Plaintiffs' Statement at ¶ J). If, as defendants contend, the recording device was removed shortly after its installation in 1992, plaintiffs' suspicions concerning their telephone conversations spanning the four year period of 1992 to 1996 could not have been aroused by the wiretap. Therefore, as to the claim that plaintiffs failed to commence suit within two years after the date they had reasonable opportunity to discover the wiretap, summary judgment is *denied*.

### B. Schmidt Family Claims

Defendants also argue for summary judgment against the Schmidt family on the basis that they have presented no substantive evidence to support their claims that their telephone conversations were recorded. (Dkts.##22 at 2; 23 at 9–13). Plaintiffs contend that there is a genuine issue of material fact concerning whether any of the Schmidt family conversations with Schmidt were recorded during the years of 1992 to 1996. (Dkt. # 27 at 14–17). However, plaintiffs have not presented any evidence to support this contention. While there is deposition testimony that Duplissie heard a conversation between Diane Dreskinis Schmidt and Schmidt on a tape in fall 1992 (Defendants' Statement and Plaintiffs' Statement ¶ 13), it appears to be a mistaken identification because Di-

ane Dreskinis, by her own testimony, did not meet Schmidt until September 1993. (*Id.* at ¶ 41). Therefore, the taped conversation could not have been between Diane Dreskinis Schmidt and Schmidt. Not only does the Schmidt family have no personal knowledge of any of their telephone conversations with Schmidt on his line at Devino Fuels being recorded (Dkt. # 25, Eric Schmidt Deposition at 10; Diane Dreskinis Schmidt Deposition at 16; Lillian Schmidt Deposition at 19–21), but Lillian Schmidt also believes she has nothing to contribute to this lawsuit. (Defendants' Statement & Plaintiffs' Statement at ¶ 49). This Court declines to presume that every conversation during four year period was recorded absent any such evidence. To do so would improperly shift the burden of proof to the defendants. *See Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir.1996). Therefore, summary judgment is *granted* in favor of the defendants with respect to the Schmidt family in that the Schmidt family has not presented substantive evidence of wiretapping.

### C. State Law Claims of Donald Schmidt and Robert Hanahan

Defendants further argue that Donald Schmidt and Robert Hanahan's state law claims are similarly barred by the applicable three-year state statute of limitations, CONN. GEN. STAT. § 52–577. (Dkt. # 22, at 2). Summary judgment on this basis is *denied* for the same reasons as set forth in Section II.A *supra.*

### III. CONCLUSION

In conclusion, for the reasons stated above, defendants' Motion for Summary

Judgment (Dkt.# 22) is *granted in part and denied in part.*[5]

---

**5.** Counsel should contact the Magistrate Judge's Chambers to arrange a final pretrial conference, to discuss, *inter alia,* the possibility of a settlement conference before another Magistrate Judge or a Parajudicial Officer.