Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 21, 2002     Decided  November 29, 2002

No. 01–7143

SHAN SPARSHOTT AND MORGAN J. SPARSHOTT,
APPELLEES/CROSS–APPELLANTS

v.

FELD ENTERTAINMENT, INC.,
APPELLANT/CROSS–APPELLEE

AND

CHARLES F. SMITH,
APPELLANT/CROSS–APPELLEE

————

Consolidated with
Nos. 01-7144, 01–7145 & 01–7146

————

Appeals from the United States District Court
for the District of Columbia
(No. 99cv00551)

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Stephen M. McNabb* argued the cause for appellant/cross-appellee Feld Entertainment, Inc. With him on the briefs were *Joseph T. Small, Jr.*, *John M. Simpson*, *Anthony E. DiResta*, and *Karen M. Moran*.

*Dawn E. Boyce* argued the cause for appellant/cross-appellee Charles F. Smith. With her on the briefs was *Whitney Adams*.

*James M. Burns* argued the cause for appellees/cross-appellants Shan Sparshott and Morgan J. Sparshott. With him on the briefs was *Bruce L. Marcus*. *Richard J. Leon* and *Robert C. Bonsib* entered appearances.

Before: GINSBURG, *Chief Judge*, HENDERSON, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Shan Sparshott and Charles Smith were both employees of Feld Entertainment, Inc., the operator of the Ringling Bros. circus. Smith was the Chief Financial Officer, a board member, and a minority shareholder; his responsibilities included management of firm security. Sparshott worked in the travel office. In 1993 the two began a romantic relationship; early in 1994 Shan Sparshott moved out of the home that she and her daughter Morgan had shared with her husband Tracy Sparshott and into a house for which Smith paid the rent.

Shan Sparshott has alleged, with powerful supporting evidence, that Smith conducted surveillance over her in a variety of ways virtually from the start of the relationship—having her followed, videotaping her at home and work, and wiretapping her home and office phones. Indeed, Smith brought the relationship crashing to a halt on March 3, 1997 when he confronted her with an audiotape of a phone call that he claimed showed she was having an affair with another Feld employee. Out of all this arose the welter of claims before us now, as well as quite a few that have dropped by the wayside.

Shan and Morgan Sparshott sued Smith and Feld for violations of the wiretap provisions of the *Omnibus Crime Control and Safe Streets Act of 1968*, ch. 119, 82 Stat. 197, 212 (1968) ("*Crime Control Act*") (codified as amended at 18 U.S.C. §§ 2510–2522 (2000)), and sued Feld under Virginia law for wrongful retention of Smith as an employee. They also brought several other state law claims, but those claims did not survive summary judgment and the Sparshotts have not appealed their dismissal. (Although Morgan joined in the surviving claims, the district court's dismissal of her wiretapping claims is not appealed, and in relation to negligent retention her position is in no way superior to her mother's losing claim. Accordingly we refer to Shan Sparshott simply as Sparshott and to Morgan not at all.) Smith brought counterclaims against Sparshott, one for malicious prosecution and three others that were dismissed and are not appealed.

At the close of the plaintiffs' case, the judge granted judgment as a matter of law for Feld on Sparshott's claims for punitive damages and for negligent retention. On the wiretapping claims the jury found for Sparshott against Feld and Smith, holding them jointly and severally liable for $250,000 in compensatory damages. It also awarded her $250,000 in punitive damages against Smith. Finally, it found against Smith on his one then-surviving counterclaim.

On appeal the parties raise a variety of issues. Feld and Smith argue that Sparshott did not sue on the wiretapping claim within the prescribed period, namely, within two years of having "a reasonable opportunity to discover the violation," 18 U.S.C. § 2520(e), so that they should have been granted judgment as a matter of law. We agree and reverse the district court. This ruling moots their other arguments on the wiretapping claims, as well as Sparshott's cross-appeal for punitive damages against Feld for the wiretapping.

Next, Sparshott argues in a cross-appeal that the district court erred in granting judgment as a matter of law for Feld on the negligent retention claims. We affirm, finding that there wasn't enough evidence for a reasonable jury to find

that Feld knew or should have known that Smith posed a danger to others.

What remains is Smith's counterclaim for malicious prosecution. Here we reverse the district court's denial of Smith's request for a new trial. We agree with his argument that the district court's allowance of far less time for him to present his case than for Sparshott to present hers was unjustified and prejudicial. The only other issue Smith raises that clearly relates to his counterclaim is whether the trial court should have prevented a police officer from testifying as to facts underlying a charge that had been expunged. We affirm the district court, finding that Virginia law does not prevent this sort of testimony.

\* \* \*

*Statute of limitations.* The statute of limitations for § 2520 states:

> A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.

18 U.S.C. § 2520(e). In other words, the statute bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts. Cf. *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) (describing the inquiry as requiring "enough to put [the plaintiff] on inquiry notice that his rights might have been invaded.").

On both the limitations and negligent retention issues we review de novo the judge's decision whether to grant judgment as a matter of law. *Holbrook v. Reno*, 196 F.3d 255, 259–60 (D.C. Cir. 1999). A court can grant judgment as a matter of law only if no reasonable juror could have resolved the issues in the plaintiff's favor. *Id.* We view the evidence in the light most favorable to the plaintiff and draw all inferences in favor of the plaintiff. *Id.* Here we find that no reasonable jury could have found that Sparshott did not have

a reasonable opportunity to discover Smith's wiretapping of her more than two years before the start of the lawsuit.

Sparshott brought suit on March 3, 1999, exactly two years after March 3, 1997, when Smith used her recorded phone conversations to accuse her of infidelity. Sparshott first points to her testimony that she was unaware of the wiretapping until that date, arguing that as the jury could believe her, it could reasonably find notice inadequate. This argument misunderstands the law. Sparshott's subjective state of mind is irrelevant. Additionally, there is no need that someone actually "discover" or be aware of the violation. Rather, the question is whether the person had a *reasonable opportunity* to discover the wiretapping.

From the very start of her relationship with Smith in 1993 Sparshott made successive discoveries not only of Smith's wiretapping but also of other similar intelligence gathering. True, Smith put her off with promises never to do it again or with explanations that (we may assume) were not transparently false. But even if the cumulative effect of the repeated discoveries were not enough, she also received outside warnings of his wiretapping—warnings with considerable objective credibility. All told, notice was plainly sufficient well before the critical date. Below we trace the details of these developments.

In 1994 Sparshott found two recording devices under her bed and connected to the phone jack. The discovery did not itself tell her that it was Smith who was wiretapping her, but was clearly evidence of a violation by someone. When Sparshott told Smith about this equipment, Smith suggested that it was Tracy Sparshott, her ex-husband. Soon after that, she enlisted Smith's help in wiretapping her ex-husband, her daughter, and her nanny, and he provided equipment strikingly similar to the recording devices she had found under the bed. In 1995, picking up a suit of Smith's at the cleaner's, she found in the suit an audiotape of her business conversations from work. According to Sparshott's own testimony, Smith admitted making this recording but promised not to do it again. This find gave her actual notice that Smith had

been wiretapping her, as well as added reason to suspect his denial of the earlier recording. Later in 1995 or 1996, Sparshott found a recording device attached to the home office phone. Smith admitted owning the recording device but claimed he was simply taping his own business calls. Altogether, the evidence of wiretapping gave Sparshott good reason to be skeptical of Smith's explanations and promises.

In addition, Sparshott had substantial evidence that Smith was spying on her in other ways. Starting after she had first moved into a house separate from her husband, Sparshott several times noticed that someone was following her, and in January 1997 confirmed that the shadow had been hired by Smith. She confronted Smith and demanded that he get counseling. In early 1996, Sparshott discovered five video cameras hidden inside her house. Smith responded to her inquiries by saying that the cameras were part of a security mechanism to protect their house from burglary; but he had told her nothing about the video cameras earlier, even though it was she and her daughter who lived in the house. For a reasonable person these events would surely undermine Smith's explanations, denials and promise to quit wiretapping her.

Finally, in 1996, Sparshott's ex-husband, a police detective, warned her that Smith was tapping her home and office lines. He even had her sign an affidavit acknowledging that he had told her of Smith's wiretapping. Though entitled to discount her ex-husband's testimony to some extent (the marital break-up was not a harmonious one, and active custody disputes lingered), the fact that Mr. Sparshott was a decorated police detective and that he went so far as to have her make an affidavit should have given her notice that she needed to have this situation investigated. Her own actions indicate that she at least took him somewhat seriously. As a result of Mr. Sparshott's statement, she began leaving her office to use a payphone to call him. All of these events occurred more than two years prior to Sparshott filing suit. A reasonable person would have contacted the police or someone at Feld to report the various grounds for suspicion.

Had Sparshott done so, she most likely would have discovered clear evidence of Smith's activities.

Sparshott next seeks to draw a distinction between *types* of wiretapping. In 1996 Smith had a caller ID unit installed on her line at work, but with the display unit in his office, where he could read what calls were coming in on her line. Sometime later, he attached a recording device to it so that he could record her calls. Since Sparshott would often have her work phone calls forwarded to her home office, this enabled Smith to wiretap any phone calls flowing through Sparshott's office at Feld, whether received by Sparshott at home or at Feld. Evidently reasoning that the technology, or purpose, or location of the earlier episodes differed from those of the caller ID wiretapping, Sparshott claims that the earlier episodes did not put her on notice of the latter, which she characterizes as a "corporate wiretapping scheme."

This distinction fails. Knowledge of one set of incidents, even if somewhat different in nature or purpose from later ones (and even if the earlier incidents are not themselves wiretapping violations, such as the evidence of Smith's secretive videotaping and shadowing), can provide a "reasonable opportunity to discover" later violations; the question is what a reasonable investigation of the known episodes would yield. Here Sparshott had evidence that Smith had been wiretapping her both at home and at work, and reasonable inquiry would have uncovered the whole scheme. A plaintiff need not even know the perpetrators of an illicit wiretapping if knowledge of the wiretapping itself would lead to discovery of the perpetrators. *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990); see also *Dyniewicz v. United States*, 742 F.2d 484, 486–87 (9th Cir. 1984) (holding in a case presenting a similar statute of limitations question that where the immediate physical cause of an injury is known, it does not matter if the plaintiff does not know who is responsible). She had a reasonable opportunity to discover all of the violations.

Sparshott finally argues that Smith fraudulently concealed his offense, thereby tolling the statute in the absence of more powerful evidence of notice than is normally required or is

present here. Indeed, we have indicated that fraudulent concealment imposes a heavier burden on the defendant to show notice—something closer to "actual notice"—than in a case untainted by such a concealment. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C. Cir. 1989). But where Congress has chosen a formula ("reasonable opportunity to discover") for a specific and obviously self-concealing crime such as wiretapping, we question whether it would make sense to suppose that fraudulent concealment could alter the *test* (as opposed to altering the underlying facts to which it is applied). The two district court cases cited by Sparshott to support her emphasis on fraudulent concealment both found the doctrine applicable, and then went on to inquire simply whether the defendant had shown "reasonable opportunity to discover," the statutory formula itself. *Schmidt v. Devino*, 106 F. Supp. 2d 345, 350–51 (D. Conn. 2000); *In re State Police Litig.*, 888 F. Supp. 1235, 1249–50 (D. Conn. 1995).

Further, our interpretation is informed by the legal context at the time Congress added an explicit mechanism for calculating the statute of limitations. See *Crime Control Act*, 82 Stat. at 223–25; *Electronic Communications Privacy Act of 1986*, Pub. L. No. 99–508, 100 Stat. 1848, 1854 (1986). Before 1986 courts had divided between those holding that the cause of action became available when the plaintiff discovered it or through due diligence could have discovered it, and those holding that it started as soon as the act occurred but could be tolled in the event of fraudulent concealment. See *Brown v. Am. Broad. Co.*, 704 F.2d 1296, 1304 (4th Cir. 1983) (discussing cases). Congress's 1986 decision to specify "reasonable opportunity to discover" could well be read as simply a choice of the former. Cf. *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984) ("The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.").

Of course, as we suggested, *the facts underlying* fraudulent concealment may alter *application* of the "reasonable opportunity" test. Here, for example, we have noted Smith's lies

and his broken promises of reform, which might well impede discovery of the ongoing wiretapping. In light of those activities, it is Smith's plain record of being caught red-handed as a multiple recidivist (topped off with Tracy Sparshott's emphatic assurance of his guilt) that establishes Sparshott's "reasonable opportunity."

The final question is whether there are any incidents of wiretapping which occurred within two years of the plaintiffs' filing suit. Sparshott argued below that there was enough evidence to show a violation on March 3, 1997—exactly two years prior to her suit. But the district court rejected this argument and charged the jury that if it found that Sparshott had a reasonable opportunity to discover the violations before March 3, 1997, the defendants would not be held liable. Trial Transcript at 1728, 1789–91. Thus, this question is not before us, having been specifically rejected by the district court, and not having been cited as error by Sparshott. Therefore we reverse the district court and find as a matter of law that Sparshott's claims under the federal wiretap provisions are barred by the statute of limitations.

*Negligent retention.* Virginia law provides a cause of action "for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." *Southeast Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999). In asserting that Feld should have known Smith was dangerous, Sparshott asserts that Feld knew about the installation of the caller ID units, that this installation was itself illegal, and that the devices had been converted to allow wiretapping to occur. Since Feld admitted that Smith's "investigation" was unjustified (a characterization that in fact its managers applied only after its full scope was revealed to them), Sparshott reasons that Feld was unreasonable in allowing the investigation to continue. But a key element in all this is mistaken: the installation of the caller ID devices was not an illegal act under 18 U.S.C. § 3121, and thus provided no notice that Smith posed a danger to others.

Section 3121(a) provides that "[e]xcept as provided in this section, no person may install or use . . . a trap and trace device without first obtaining a court order. . . ." 18 U.S.C. § 3121(a). Subsection (b) provides three exceptions, one of which is relevant:

> (b) EXCEPTION.—The prohibition of subsection (a) does not apply with respect to the use of a pen register or a trap and trace device by a provider of electronic or wire communication service— . . .

> (3) where the consent of the user of that service has been obtained.

*Id.* § 3121(b). While a "provider of electronic or wire communication service" did not install the caller ID *display unit* at issue in this case, courts have found that the phrase "trap and trace device" actually refers to the "signaling equipment and software necessary to use" the display device, "and that it is this equipment that performs the trap and trace." *Ohio Domestic Violence Network v. Pub. Utils. Comm'n*, 638 N.E.2d 1012, 1021 (Ohio 1994); see also *Wisconsin Prof'l Police Ass'n v. Pub. Serv. Comm'n*, 555 N.W.2d 179, 187–88 (Wis. Ct. App. 1996). But see *Barasch v. Bell Tel. Co.*, 605 A.2d 1198, 1201–02 (Pa. 1992) (finding under a similar Pennsylvania statute that a caller ID display unit is a trap and trace device). If a contrary result were reached, it is hard to see how any caller ID system, even that used for emergency services, would be legal. See, e.g., *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 777–78 (S.C. 1991) (interpreting similar provisions in its state code). Because a caller ID unit is not a trap and trace device, Smith's conduct was not illegal under § 3121, and it therefore provided no reason for Feld to believe he might be dangerous.

Sparshott's remaining arguments on negligent retention are meritless. Sparshott argues that the caller ID devices were converted to allow wiretapping to occur, which should have put Feld on notice that Smith might use them to wiretap. But nowhere does Sparshott show that management-level employees at Feld were on notice of the conversion of the caller ID devices to wiretapping use. See

*Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 264–65, 269 (4th Cir. 2001) (applying Virginia law and finding that where an employee had reported sexual harassment to several other employees and to the CEO's son, but not to any manager, the company did not have actual or constructive notice sufficient to support a negligent retention claim). Nor was there any other evidence that Feld knew at the time that Smith's investigation of Sparshott was unjustified or illegal in any way.

As no reasonable jury could have found that Feld knew or should have known that Smith posed a danger to others, see *Holbrook v. Reno*, 196 F.3d at 259–60, we affirm the district court's grant of judgment as a matter of law on the negligent retention claims.

*Smith's counterclaim for malicious prosecution.* Smith argues that the district court abused its discretion in allowing him only six hours to try his case (including counterclaims), compared to 15 hours for the other defendant and 16 hours for the plaintiff. His "case" originally comprised four counterclaims. Two were dismissed before trial and a third before the case was sent to the jury. Smith has not appealed the dismissal of his three claims. In considering whether or not the amount of time he had at trial was reasonable, we consider his two counterclaims that were alive at the time of trial (as well as his defense). In considering whether he was prejudiced, we consider only his counterclaim for malicious prosecution—the only claim still alive.

Federal Rule of Civil Procedure 59(a) states that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. P. 59(a). Discretion to grant a new trial has generally been understood to include actions rendering the trial unfair. See *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). The district court's decisions on how to structure time limits are reviewable only for abuse of discretion. See, e.g., *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994); cf. *United States v. Ramsey*, 165 F.3d 980, 983 n.3 (D.C. Cir. 1999)

(holding that evidentiary rulings are subject to abuse of discretion review). And a party arguing that time limits were unfair must also show that he was prejudiced thereby. *Deus*, 15 F.3d at 520.

Here the court gave Smith only six hours, compared to 15 for the other defendant and 16 for the plaintiffs. Clearly the parties need not always be granted equal amounts of time to try their case. Particularly in a case involving multiple defendants (such as this one), a district court might reasonably conclude that overlap between defense theories warrants giving each defendant a smaller amount of time. But the court cannot make such a decision without considering how much overlap there is between defense theories and what are the likely time needs of all the parties. Sparshott points to overlap between Smith and Feld on numerous issues, such as the statute of limitations and the claim that Sparshott did not suffer damages due to the wiretapping. But Smith had a very different theory of the case than co-defendant Feld (along with counterclaims not shared by Feld). Feld was largely trying to show that it did not participate in or know about Smith's behavior. Smith, on the other hand, attempted to persuade the jury that he did not wiretap Sparshott and that Sparshott knew about and consented to his videotaping and other behavior. In addition, Smith's counterclaims were not shared by Feld. Further, there is nothing peculiar about Sparshott's version of events that entitled her to more time to present her side. Given Smith's distinct counterclaims and defenses, he should have been given an amount of time much closer to the amount that Sparshott received.

In *Deus* and in the other cases cited by Sparshott, the court decided that the district court had not abused its discretion since the parties had equal amounts of time to try the case and there was little evidence that the moving party had been prejudiced. 15 F.3d at 520 (finding that court did not exceed discretion where the judge told the parties in advance that they would each have three days to present their case); *Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d 443, 450–51 (9th Cir. 1994) (finding no abuse of discretion where the parties were given equal amounts of time and a

party did not explain how it was prejudiced); *Matton v. White Mountain Cable Constr. Corp.*, 190 F.R.D. 21, 23 (D. Mass. 1999) (finding no abuse of discretion where parties were given equal amounts of time, the limits were clear, and prejudice was highly questionable). These cases are not closely analogous to our situation, where Smith received a fraction of the time given to Sparshott.

Sparshott's claim that Smith acknowledged that the time limit was not prejudicial is based on a single remark, the facetiousness of which screams from the page. ("We can splurge. With our great six hours total.") While Smith's counsel did not go into great detail below about prejudice, she objected below and named specific witnesses that she would have called for the claim of malicious prosecution. She also said that she wanted to call some witnesses on the issue of damages for malicious prosecution. See Trial Transcript at 1566–68. Given the wide disparity in time limits, we hold that this demonstration of prejudice is enough. Accordingly we find an abuse of discretion by the district court, and reverse and remand for a new trial on Smith's counterclaim.

Only one of Smith's remaining arguments appears to be relevant to his counterclaim of malicious prosecution. He says that the trial court abused its discretion by allowing a Fairfax county police officer to testify despite an order expunging the record of a charge against Smith, later nolle prossed, for unlawful videotaping. Smith's brief does not offer the text of the governing statute—always a bad sign. In fact the statute makes it unlawful for one having access to an expunged record "to open or review it or to disclose to another person any *information from it* without an order from the court which ordered the record expunged." See Va. Code Ann. § 19.2–392.3(A) (Michie 1950) (emphasis added). Here, the officer was testifying as to information he acquired in his investigation, *not* information learned *from* the expunged record. See Trial Transcript at 389–97. We see no reason to give the statute the reading claimed by Smith, which would capriciously immunize a person from perfectly valid evidence.

The judgment against Feld and Smith is reversed; the grant of judgment as a matter of law on the negligent retention claim is affirmed; and judgment against Smith on his surviving counterclaim is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*